Filed 5/17/13  Certified for publication 6/11/13 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| J.R. MARKETING, L.L.C. et al.,<br><br>    Plaintiffs, Cross-Defendants and Respondents,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>    Defendant, Cross-Complainant and Appellant. | A133750<br><br>(San Francisco County<br>  Super. Ct. No. CGC-06-449220) |

This is an appeal from an order sustaining the demurrers of respondents/cross-defendants Squire Sanders L.L.P. (Squire) and Scott Harrington in a cross-action by appellant Hartford Casualty Insurance Company (Hartford) for reimbursement of allegedly excessive or otherwise inappropriate legal fees and costs billed by Squire to Hartford.  Squire served as independent counsel for cross-defendants J.R. Marketing, L.L.C., Noble Locks Enterprises, Inc., Jane and Robert Ratto, Lenore and Germain DeMartinis, and Penelope Kane (collectively, insured cross-defendants) in a California tort action after Hartford disclaimed coverage for the action under the relevant insurance policy.  Squire also served as counsel for certain of the insured cross-defendants in two non-California actions, and as counsel for the non-insured cross-defendants – to wit, Harrington, Wheatland Baking Inc., and Kane Processing, L.L.C. – in the California action or one or more of the non-California actions (collectively, uninsured cross-defendants).  According to Hartford, some portion of the fees and costs billed by Squire

1

and paid by Hartford were for legal services provided to cross-defendants outside the scope of Hartford's contractual obligations as insurer under the relevant policy. For reasons discussed below, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

This is not the first time this court been called upon to review trial court rulings in this insurance coverage lawsuit. We have twice before decided appeals in this matter. (See *J.R. Marketing, L.L.C. v. Hartford Cas. Ins. Co.*, A115472 (Oct. 30, 2007) (nonpub); *J.R. Marketing, L.L.C. v. Hartford Cas. Ins. Co*., A115846 (Nov. 30, 2007) (nonpub).)[1] As such, we have already set forth in detail much of the relevant factual and procedural background of this coverage dispute, allowing us, in the name of judicial efficiency, to borrow extensively from our previous opinions for purposes of this appeal. With respect to more recent events, however, we abide by well-established principles requiring us, when reviewing an order on demurrer, to accept as true all factual allegations set forth in the operative complaint. (*Foley v. Interactive Data Corp*. (1988) 47 Cal.3d 654, 664, fn. 2.) We thus turn to the relevant facts.

In Summer 2005, Hartford issued two commercial general liability policies, the first policy to cross-defendant Noble Locks Enterprises, Inc., effective July 28, 2005 to July 28, 2006, and the second policy to cross-defendant J.R. Marketing, L.L.C., effective August 18, 2005 to August 18, 2006 (collectively, the J.R. Marketing and Noble Locks policies). Under these policies, Hartford promised to defend and indemnify claims against the named insureds for certain business-related damages subject to various exclusions of coverage.

In September 2005, several individuals, including Meir Avganim, sued cross-defendants (except Wheatland Baking, Inc.) and others for intentional misrepresentation,

---

[1] In the first appeal, we upheld a trial court order requiring Hartford to immediately pay Squire's outstanding legal fees and costs and declining to permit Hartford to avail itself of the protections provided to insurers pursuant to Civil Code section 2860, subdivision (c). This order will be discussed in greater detail herein. In the second appeal, we upheld a trial court order denying Hartford's motion to disqualify Squire as counsel.

breach of fiduciary duty, unfair competition, restraint of trade, defamation, interference with business relationships, conversion, accounting, mismanagement and conspiracy in Marin Superior Court (Marin or *Avganim* matter). Cross-complaints were subsequently filed by J.R. Marketing, L.L.C., the Rattos, Kane and Kane Processing, L.L.C. The Marin matter was immediately tendered to Hartford for defense and indemnity under the J.R. Marketing and Noble Locks policies.

Around the same time, two actions were brought against various of the cross-defendants in non-California courts (non-California matters). The complaints in the non-California matters were likewise tendered to Hartford for defense and indemnity under the J.R. Marketing and/or Noble Locks policies.

In the Marin matter, Hartford refused to defend or indemnify the named cross-defendants on the ground, among others, that the acts complained of appeared to have occurred before the relevant insurance policy's inception date. Hartford nonetheless invited them to provide more information should they believe its position to be erroneous. In February 2006, cross-defendants J.R. Marketing, L.L.C., Noble Locks Enterprises, Inc., the Rattos, and Kane, represented by Squire, filed this coverage lawsuit, after which Hartford reconsidered its position and, based on newly provided information, agreed in March 2006 to provide a defense in the Marin matter under the J.R. Marketing policy subject to a reservation of rights. In doing so, Hartford continued to refuse to pay defense costs incurred before January 19, 2006, or to provide the named cross-defendants independent counsel in place of its panel counsel. The named cross-defendants thus moved for summary adjudication on the issue of whether Hartford owed them a duty to defend, including a duty to provide independent counsel, from the initial tender of the Marin matter in September 2005. The trial court granted their motion on July 26, 2006, finding a legal duty to defend and to fund independent ("*Cumis*") counsel under the J.R. Marketing policy.[2]

---

**2**    See *San Diego Fed. Credit Union v. Cumis Ins. Society Inc.* (1984) 162 Cal.App.3d 358. For purposes of this appeal, we use the terms "*Cumis* counsel" and "independent counsel" interchangeably.

The trial court also granted a subsequent motion by cross-defendants J.R. Marketing, L.L.C., Noble Locks Enterprises, Inc., the Rattos, and Kane to enforce Hartford's duty to defend and fund independent counsel under the J.R. Marketing policy (hereinafter, enforcement order). Specifically, on September 27, 2006, the trial court ordered Hartford to pay the insured cross-defendants' outstanding invoices within 15 days and to pay "all future reasonable and necessary defense costs within 30 days of receipt." Acknowledging a right of reimbursement, the enforcement order provided, "[t]o the extent Hartford seeks to challenge fees and costs as unreasonable or unnecessary, it may do so by way of reimbursement after resolution of the *Avganim* matter. *American Motorists Insurance Co. v. Superior Court* ("*AMICO*") (1998) 68 Cal.App.4th 864, 874; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 50 *et seq.*"[3]

Finally, the order provided that, while Squire's bills had to be reasonable and necessary, Hartford was barred from invoking the protective provisions afforded insurers under Civil Code section 2860 because it "has breached and continues to breach its defense obligations by (1) failing to pay all reasonable and necessary defense costs incurred by the insured and by (2) failing to provide *Cumis* counsel."[4] (See, e.g.,

---

[3] Hartford subsequently agreed to defend and fund independent counsel for Germain and Lenore DeMartinis in the Marin matter based upon their status as J.R. Marketing employees. They were also added as plaintiffs in this coverage action.

[4] Civil Code section 2860, discussed in much greater detail below, provides in full: "(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that counsel consistent with this section.
"(b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.

*Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223, 1233.) In so ordering, the trial court expressly reasoned there was "no authority for the proposition that once an insurer breaches its duty to defend by refusing to provide *Cumis* counsel, when that insurer is later ordered to provide *Cumis* counsel, and continues to refuse the order, but later agrees to provide that counsel, it can unilaterally take advantage of the rate limitation provision of Section 2860. Indeed, such an outcome would encourage insurers to reject their *Cumis* obligation for as long as they chose, safe in the notion that they

"(c) When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage. The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. This subdivision does not invalidate other different or additional policy provisions pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees. Any dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute.

"(d) When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action. Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the superior court. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

"(e) The insured may waive its right to select independent counsel by signing the following statement: 'I have been advised and informed of my right to select independent counsel to represent me in this lawsuit. I have considered this matter fully and freely waive my right to select independent counsel at this time. I authorize my insurer to select a defense attorney to represent me in this lawsuit.'

"(f) Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured. Nothing in this section shall relieve the insured of his or her duty to cooperate with the insurer under the terms of the insurance contract."

5

could, at any point, invoke the protection of the statute, effectively forcing their policyholder to transfer the file to yet another law firm whose rates are lower." In this case, the court added, "such a result would work an injustice, since Hartford has already forced its policyholders to transfer the defense of the *Avganim* matter from [Squire] to Hartford's panel counsel, only to have it come back again." Finally, the court concluded: "[T]he province of the Court is not to continually monitor the conduct of a breaching insurer to determine at what point it is no longer in 'breach' so that it may benefit from a statute whose protection it previously waived."

This court affirmed both the enforcement order and the underlying summary adjudication order in the aforementioned nonpublished opinion dated November 30, 2007.[5]

On or about October 2009, the Marin matter was resolved. Cross-defendants, including the insured and uninsured, submitted bills to Hartford for defense fees and costs totaling over $15 million, which Hartford subsequently paid. According to Hartford, these defense fees and costs were charged by Squire for its legal services as independent counsel for the insured cross-defendants in the Marin matter, as well as for its services as counsel for the insured and uninsured cross-defendants in the Marin and/or non-California actions. Hartford further alleges cross-defendants authorized and ratified each act of legal service rendered by Squire on their behalf as counsel in those actions, and did so under the auspices of the enforcement order.

After paying Squire's invoices, on July 15, 2011, Hartford filed the operative cross-complaint in this action, asserting causes of action for reimbursement of monies

---

[5] After cross-defendants J.R. Marketing, L.L.C., Noble Locks Enterprises, Inc., the Rattos, and Kane filed their motion to enforce the duty to defend but before the motion was heard, Hartford filed its motion to disqualify Squire for reasons not relevant herein. We affirmed the trial court's decision to deny this motion in the appeal mentioned above filed in October 2007. (*J.R. Marketing, L.L.C. v. Hartford Cas. Ins. Co.*, A115472 (Oct. 30, 2007) (nonpub).)

6

paid pursuant to the enforcement order, unjust enrichment, accounting and rescission.[6] In this cross-complaint, Hartford alleges Squire submitted improper invoices to Hartford "under the auspices of the enforcement order," which caused it to pay in excess of $15 million in defense fees and costs. As such, Hartford claims a right under the enforcement order to obtain reimbursement of "all unreasonable or unnecessary fees and costs billed to and paid by Hartford," including those amounts outside the scope of the enforcement order for services rendered: (a) for individuals and entities not insured under the underlying policies; (b) prior to any proper tender to Hartford by any individual or entity; (c) for any individual or entity in one of the non-California actions; (d) for prosecution of any affirmative cross-complaints in the Marin action; and/or (e) for any individual or entity to the extent such fees or costs are abusive, excessive, unreasonable or unnecessary.

Respondents Squire and Harrington, as well as cross-defendants J.R. Marketing, L.L.C., the Rattos, the DeMartinis, and Kane, thereafter demurred to the operative cross-complaint on the ground that each cause of action fails to allege facts sufficient to state a valid legal claim against any of the named cross-defendants. Following a hearing on September 1, 2011, the trial court sustained the demurrer to the unjust enrichment and accounting causes of action without leave to amend as to all cross-defendants and to the reimbursement and rescission causes of action without leave to amend as to respondents Squire and Harrington. The trial court overruled the demurrer to the reimbursement and rescission causes of action as to cross-defendants J.R. Marketing, L.L.C., the Rattos, the DeMartinis, and Kane.

On December 21, 2011, a judgment of dismissal was thus entered in favor of Squire and Harrington and against Hartford. Hartford appeals.

## DISCUSSION

Hartford raises one primary issue for our review in seeking to overturn the trial court's order sustaining without leave to amend the demurrer of respondents Squire and

---

**6** The rescission cause of action was asserted against all cross-defendants except Squire. The remaining causes of action were asserted against all cross-defendants.

7

Harrington: Does Hartford have a quasi-contractual right rooted in common law to maintain a direct suit against Squire, independent counsel for certain cross-defendants in the Marin action, or Harrington, an uninsured defendant in the Marin action, for reimbursement of excessive or otherwise improperly-invoiced defense fees and costs? [7] For reasons set forth below, we conclude the answer with respect to both respondents is "No."

## I. Standard of Review

"In evaluating a trial court's order sustaining a demurrer, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) In doing so, we accept as true all properly pleaded material facts, as well as facts that may be implied from the properly pleaded facts [citation], and we also consider matters that may be judicially noticed [citation]. We do *not* assume the truth of contentions, deductions or conclusions of fact or law. (*Ibid*.)"  (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1589.)

"When a demurrer has been sustained . . . without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, . . . we reverse; if not, . . . we affirm."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "The plaintiff 'bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law' and 'must show the complaint alleges facts sufficient to establish every element of [the] cause of action.' [Citation.]"  (*Peterson v. Cellco Partnership, supra,* 164 Cal.App.4th at p. 1589.)

## II. The Law Governing the Relationship Among Insurer, Insured and Independent Counsel.

Under well-established California insurance law, an insurer has the right to control defense and settlement of a third party action against its insured, and to otherwise directly participate in the litigation on the insured's behalf, so long as no conflict of interest arises

---

[7] Hartford does not challenge on appeal the trial courts ruling on its cause of action for rescission.

between the insurer and the insured. (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1406-1407 (*Gafcon*) [recognizing a fiduciary relationship between an attorney retained by an insurer, on the one hand, and both the insurer and insured, on the other hand, where no conflict of interest exists]; see also *National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1727 ["[s]o long as the interests of the insurer and the insured coincide, they are both the clients of the defense attorney and the defense attorney's fiduciary duty runs to both the insurer and the insured"].)

In this case, however, it is undisputed a conflict of interest between Hartford and the insured cross-defendants did in fact arise. As such, a different rule was triggered. Specifically, where, as here, the interests of the insurer and the insured no longer align, the insured is entitled under Civil Code section 2860 (section 2860) to independent counsel at the insurer's expense. (§ 2860 [codifying and clarifying the *Cumis* doctrine]; e.g., *Gafcon, supra*, 98 Cal.App.4th at pp. 1421-1422.) Although independent counsel owes certain limited duties to the insurer under these circumstances (mainly related to sharing nonprivileged information), independent counsel represents the insured alone. (§ 2860, subds. (d), (f).) Otherwise stated, "there is no attorney-client relationship between *Cumis* counsel and the insurer." (*Assurance Co. of America v. Haven* (1995) 32 Cal.App.4th 78, 87-88, 90 [*Assurance*].)

Section 2860 also provides certain protections for the insurer. These protections include provisions governing the amount of fees payable to independent counsel, the subject matter of this dispute. For example, the statute limits the rate of fees an insurer may be obligated to pay to "the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." In addition, the statute mandates that fee disputes "shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute." (§ 2860, subd. (c).)

Yet these protective rules come with an important caveat. " 'To take advantage of the provisions of [section] 2860, an insurer must meet its duty to defend and accept tender of the insured's defense, subject to a reservation of rights.' " (*Atmel Corp. v. St.*

9

*Paul Fire & Marine* (N.D. Cal. 2005) 426 F.Supp.2d 1039, 1047; see also *Truck Ins. Exchange v. Superior Court* (1996) 51 Cal.App.4th 985, 998.) When, to the contrary, the insurer fails to meet its duty to defend and accept tender, the insurer forfeits the protections of section 2860, including its statutory limitations on independent counsel's fee rates and resolution of fee disputes. More generally, "[w]hen an insurer wrongfully refuses to defend, the insured is relieved of his or her obligation to allow the insurer to manage the litigation and may proceed in whatever manner is deemed appropriate." (*Eigner v. Worthington* (1997) 57 Cal.App.4th 188, 196. See also *Stalberg v. Western Title Ins. Co., supra,* 230 Cal.App.3d at p. 1233 [an insurer that wrongfully refuses to defend the insured forfeits its right to control the defense, including its rights to select defense counsel and litigation strategy].)

Here, undisputedly, Hartford failed to meet its duty to defend and accept tender of the defense in the Marin matter, thereby, as this court recognized in 2007, forfeiting its right to rely on the statutory protections of section 2860 and to otherwise control the defense. (See *J.R. Marketing, L.L.C. v. Hartford Cas. Ins. Co.*, A115846 (Nov. 30, 2007), at pp. 18-19.)

## III. The Right of an Insurer to Seek Reimbursement for Defense Fees and Costs.

### A. Does Hartford have a right to seek reimbursement from Squire?

It is within this context that we are left to consider Hartford's asserted right to seek reimbursement in a direct suit against Squire. In doing so, we first identify two well-established legal principles relevant to any claimed right of reimbursement by an insurer. First, with respect to claims that are at least partially covered under the relevant policy, an insurer's duty to defend extends to the insured's entire defense cost. (*Buss v. Superior Court, supra,* 16 Cal.4th at pp. 47-48 [recognizing that insurers contract to pay the entire cost of defending at-least-potentially-covered claims] [*Buss*]). And second, with respect to claims not even potentially covered under the relevant policy, an insurer, like Hartford, does indeed have a right to seek reimbursement of its cost to defend such claims once the underlying suit has been resolved. (E.g., *Buss, supra*, 16 Cal.4th at p. 50 ["As to the claims that are not even potentially covered, however, the insurer may indeed seek

10

reimbursement for defense costs"]; *Reliance Ins. Co. v. Alan* (1990) 222 Cal.App.3d 702, 710.) However, having acknowledged this right to seek reimbursement as to not-even-potentially-covered claims, the question remains *against whom* may the insurer assert this right.

Hartford, in arguing its right to seek reimbursement extends against independent counsel, looks to language in the California case law, including the high court's decision in *Buss*, describing the nature of this right as both contractual and quasi-contractual: "Under the policy, the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered. With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs. To attempt to shift them would not upset the arrangement. [Citation.] *The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual.* [Fn. omitted.] As stated, under the law of restitution such a right runs against the person who benefits from 'unjust enrichment' and in favor of the person who suffers loss thereby. The 'enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed 'unjust.' "[8] (*Buss, supra*, 16 Cal.4th at pp. 51-52 [italics added]; see also *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370 [*Durell*] [" 'where appropriate [in cases involving fraud, duress, conversion, or similar conduct], the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment' "].)

---

[8] The California Supreme Court justified its conclusion as follows: "Not only is it good law that the insurer may seek reimbursement for defense costs as to the claims that are not even potentially covered, but it also makes good sense. Without a right of reimbursement, an insurer might be tempted to refuse to defend an action in any part--especially an action with many claims that are not even potentially covered and only a few that are--lest the insurer give, and the insured get, more than they agreed. With such a right, the insurer would not be so tempted, knowing that, if defense of the claims that are not even potentially covered should necessitate any additional costs, it would be able to seek reimbursement." (*Buss, supra*, 16 Cal.4th at pp. 52-53.)

11

According to Hartford, *Buss* and *Durell* stand for the proposition that a right of restitution lies, independent of a contractual relationship, between any person who has suffered loss and the person who has been unjustly enriched thereby. Thus, relying on the above-identified language, and in particular the language in *Buss* relating to an insurer's right to reimbursement for unbargained-for defense costs, Hartford argues one step further that insurers are entitled to reimbursement from *independent counsel* of those costs to prevent counsel's unjust enrichment by the insurer. As we will explain, the relevant law and policy both suggest otherwise.

With respect to the law, Hartford's argument ignores several implications of the important caveat governing restitution claims identified in both *Buss* and *Durell*. According to this caveat, " ' "[t]he fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it. [Citation.]" ' [Citation.]" (*Durell, supra,* 183 Cal.App.4th at p. 1370; see also *Buss, supra*, 16 Cal.4th at pp. 50-52.)[9] Or, as other courts have expressed, "restitution should be required only when it ' " 'involves no violation or frustration of law or opposition to public policy, either directly or indirectly.' ' " ([*County of San Bernardino v. Walsh* (2007)] 158 Cal.App.4th [533,] 542.)" (*Peterson v. Cellco Partnership, supra,* 164 Cal.App.4th at p. 1595.)

In this case, important policies – to wit, those underlying the enactment of section 2860 – would indeed be frustrated by allowing Hartford to directly sue Squire for reimbursement. As explained in great detail above, Hartford's and Squire's relationship

---

[9] Thus, as the California Supreme Court explained in *Buss*, while "[a]ny 'enrichment' of the insured by the insurer through the insurer's bearing of bargained-for defense costs is consistent with the insurer's obligation under the policy and therefore cannot be deemed 'unjust,' " the same cannot be said of unbargained-for defense costs (i.e., those not even potentially covered under the policy). As to the latter costs only, an implied quasi-contractual right to reimbursement would be appropriate because "[t]he 'enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed 'unjust.' " (*Buss, supra*, 16 Cal.4th at pp. 50-51.)

is governed by the *Cumis* scheme, which "envisions an attorney pursing an insured's defense independently of the insurer rather than intertwined with it." (*Assurance, supra*, 32 Cal.App.4th at p. 91, fn. 8.) Thus, under this scheme, where, as here, the insurer breaches its duty to defend the insured, the insurer loses all right to control the defense, including, necessarily, the right to control financial decisions such as the rate paid to independent counsel or the cost-effectiveness of any particular defense tactic or approach. (*James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093,1103, fn.3 ["Th[e] right to control the defense necessarily encompasses the right to determine what measures are cost effective, bearing in mind liability and indemnity exposure" ]; *Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1009, fn. 9 [insurers are barred from imposing on the insured's counsel discovery or research limitations that would impede counsel's professional judgment or otherwise unreasonably interfere with the insured's defense].)[10] Retroactively imposing the insurer's choice of fee arrangement for the defense of the insured by means of a post-resolution quasi-contractual suit for reimbursement against the insured's separate counsel, such as Hartford seeks to pursue here against Squire, runs counter to these *Cumis*-scheme principles for several reasons well-illustrated by the facts at hand.

Recall Hartford, an insurer in breach of its duty to defend, chose not to align its interests with the insured cross-defendants for purposes of the Marin defense and thereby

---

[10] Indeed, even where the insurer is *not* in breach of its duty to defend, independent counsel still owes very few duties directly to the insurer given the lack of an attorney-client relationship between them and the consequent "compelling need for *Cumis* counsel to remain free from the oftentimes subtle ethical dilemmas and temptations that arise along with conflict in joint representations." (*Assurance, supra,* 32 Cal.App.4th at pp. 87-88 [insurer may sue *Cumis* counsel for breach of section 2860-specified duties to disclose, inform, consult or cooperate regarding information known to *Cumis* counsel, but may not sue *Cumis* counsel for negligent failure "to investigate, prepare, assert, establish, or perform similar functions regarding a defense or position in [the insurer's] favor"]; see also § 2860, subds. (d), (f) [identifying only the following duties of *Cumis* counsel to the insurer: To "disclose . . . all information concerning the action except privileged materials relevant to coverage disputes," to timely "inform and consult with the insurer on all matters relating to the action," and to "cooperate fully in the exchange of information that is consistent with . . . counsel's ethical and legal obligation to the insured"].)

forfeited all right to control that defense. Placed in this position, cross-defendants, not Hartford, hired Squire as independent counsel to represent their interests in the defense, negotiated the relevant fee arrangement with Squire, and oversaw all matters of defense strategy including, presumably, deciding with Squire the cost/benefit of various litigation pursuits. It is within this context that Hartford claims the legal right to bring a reimbursement action against *Squire* for allegedly charging excessive, unreasonable or unnecessary fees for their provision of legal services in the name of cross-defendants' defense. We think not. As set forth above, it is clear California law bars an insurer, like Hartford, in breach of its duty to defend from thereafter imposing on its insured its own choice of defense counsel, fee arrangement or strategy. This court now takes the law one slight step further by holding Hartford likewise barred from later maintaining a direct suit against independent counsel for reimbursement of fees and costs charged by such counsel for crafting and mounting the insureds' defense where Hartford considers those fees unreasonable or unnecessary.

To hold otherwise would effectively afford the insurer that has waived the protections of section 2860 through its own wrongdoing more rights in a fee dispute with independent counsel than the insurer that has not waived such protections. Specifically, while the insurer in compliance with its duty to defend would be limited under section 2860 to arbitrating a fee dispute, the insurer in breach of its duty could bring the fee dispute to court.[11] The law does not sanction this inequitable result. (See *Comunale v. Traders & General Ins. Co*. (1958) 50 Cal.2d 654, 660 ["Certainly an insurer who . . . wrongfully refused to defend should be in no better position than if it had assumed the defense"]; *The Housing Group v. PMA Capital Ins. Co*. (2011) 193 Cal.App.4th 1150, 1157 [rejecting the position that " 'insurers always can take advantage of [§2860] despite immediately failing to meet their burden to defend' " because it "would encourage

---

[11]     As Squire also points outs, had Hartford met its duty to defend in the Marin matter, the issue of its right to directly sue Squire for reimbursement would not have arisen. Under section 2860, subdivision (c), Hartford would not only have had the right to pay a specific hourly rate, it would have had the right to arbitrate any fee dispute.

14

insurers to reject their *Cumis* obligations for as long as they chose because they knew they could invoke the limitations and remedies of section 2860 at any time"].)

Indeed, by providing legal services to cross-defendants, Squire did not confer any benefit upon Hartford. Rather, Squire conferred a benefit on its clients – to wit, cross-defendants. That Hartford paid Squire for those services does not change this fact. There simply is no legal basis here for the restitution claim that Hartford has asserted against Squire. Here, it is the insured cross defendants – rather than independent counsel – that the insurer should look to for reimbursement if it believes the fees were incurred to defend claims that were not covered by the insurer's policies or that the insured agreed to pay Squire more than was reasonable for the services that Squire performed.

Finally, we add that our holding in this regard is actually quite limited. Given the precise issue raised by the parties to this appeal, we have no reason to, and do not, take a position as to whether an insurer would have the right to maintain a direct suit against independent counsel for fraudulent billing practices in connection with the underlying defense of its insured. (Cf. Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co. (1993) 15 Cal.App.4th 800, 803 [pointing out that if "the only issue in dispute truly was the amount of Cu*mis* counsel fees the insurance company owed, it would be improper, in most circumstances at least, for a trial court to stay the arbitration proceeding mandated under section 2860 in order to allow a judicial proceeding *in the California courts* to decide that issue and that issue alone"]; *Fireman's Fund Ins. Companies v. Younesi* (1996) 48 Cal.App.4th 451, 455-459 [where an insurer sued its insured's *Cumis* counsel for fraudulent billing practices, the appellate court affirmed an order denying counsel's motion to compel arbitration under section 2860, subd. (c), holding "the language of [section 2860, subd. (c)] can only be interpreted to limit the scope of arbitrable disputes to those in which only the amount of legal fees or the hourly billing rates are at issue"].)

Thus, for all the reasons stated, we conclude that, where a conflict arises with respect to defense fees or costs paid by an insurer in breach of its duty to defend to the

15

independent counsel hired by its insured following this breach, the insurer must look to the insured, not independent counsel, to resolve the conflict.[12]

### B. Does Hartford have a right to seek reimbursement from Harrington?

Finally, we address Hartford's contention the trial court erred by sustaining the demurrer to its reimbursement cause of action as to respondent Harrington, an individual named as a defendant in the Marin matter but not insured by Hartford.[13] In seeking reimbursement from Harrington, Hartford raises one argument in its opening brief without any citation to legal authority or to the factual record: Hartford claims simply that it has a right to restitution from Harrington because he was unjustly enriched by receiving a Hartford-financed defense in the Marin matter.[14] As respondents point out, however, in addition to failing in its opening brief to cite to relevant legal authority or to the record, Hartford also failed in the operative complaint to allege that any fees or costs were incurred or legal services provided solely for Harrington's defense (as opposed to for one or more of the insured cross-defendants). Moreover, Hartford offered no explanation in its opening brief as to how this failure to allege could be remedied.

---

[12] Hartford's accounting cause of action against Squire, which Hartford acknowledges is simply an extension of its reimbursement cause of action, fails for the same reason: It is based on the nonexistent right of an insurer in breach of its duty to defend to directly sue independent counsel for reimbursement of monies paid for the insured's defense. As reflected in the operative complaint, this cause of action, by which Hartford "seeks an accounting from [Squire] as to all monies paid to, or for the benefit of, each of the Cross-defendants" in the Marin and non-California actions, serves no purpose other than to permit an accurate calculation of the amount subject to reimbursement. Because we hold there is no right to reimbursement from Squire in this case, there is no amount subject to reimbursement.

[13] The trial court sustained the demurrer to the reimbursement cause of action as to respondents Squire and Harrington without leave to amend. In doing so, the court noted the need to protect the attorney-client relationship between the insured and their counsel. However, the court did not specifically state why the demurrer was sustained as to Harrington, as distinguished from Squire.

[14] Hartford's entire argument on this point is as follows: "Had Hartford not provided Harrington a defense, he would have had to pay for his own defense. Accordingly, he was unjustly enriched and should be subject to a restitution action. Hartford should be entitled to recover the value of the legal services provided to Harrington."

We conclude based on this record that Hartford has failed its burden to prove the trial court abused its discretion by sustaining the demurrer as to Harrington without leave to amend. This court is not obligated to research the relevant law or to develop an appellant's otherwise conclusory legal assertions. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1; *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 513, fn. 3.) To the contrary, this court is entitled to disregard legal assertions not supported by meaningful argument, particularly where the proponent of such assertions has the burden to prove grounds for reversal. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522; *Sehulster Tunnels/Pre-Con v. Traylor Brothers, Inc./Obayashi Corp.* (2003) 111 Cal.App.4th 1328, 1345, fn. 16.)

While Hartford may have provided additional argument in its reply brief, its argument did no more than respond to points raised by respondents in their appellate brief.[15] This backward approach, particularly where Hartford carried the burden of demonstrating the trial court's error, runs contrary to our well-established rules of appellate litigation. (*Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322 ["[w]e do not entertain issues raised for the first time in a reply brief, in the absence of a showing of good cause why such issues were not raised in the opening brief. [Citations.] No good cause appearing here, we will disregard these issues"].) Moreover, to condone this approach for purposes of the present appeal would be unfair to respondents, who

---

[15] After pointing out the above-mentioned deficiencies in Hartford's opening brief with respect to its challenge to the order sustaining Harrington's demurrer, respondents set forth two legally supported arguments for affirming: (1) Harrington, as an uninsured, was not subject to the enforcement order upon which Hartford relies in seeking reimbursement; and (2) because there was no contractual relationship between Hartford and Harrington, Hartford has no remedy against Harrington for reimbursement. In its reply brief, Hartford briefly responds to each of these arguments, claiming for the first time that the lack of a contractual relationship or binding order between Hartford and Harrington is irrelevant because its right to reimbursement is "implied in law as quasi-contractual." (See *Buss, supra*, 16 Cal.4th at p. 51.) Further, Hartford claims for the first time that it was not required to plead specific fees incurred on behalf of Harrington "given that Squire Sanders was in possession of that information, not Hartford. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 549-550 . . . .)"

17

have been deprived by Hartford's tactic of any opportunity to counter its reply arguments. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)  As our appellate colleagues in the Third District have aptly noted: " 'Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief.  To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission.  Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " (*Neighbors v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

Thus, we conclude that, given Hartford's failure to state facts supporting its reimbursement cause of action against Harrington, and to present timely and legally-supported arguments as to how the trial court erred or how the operative complaint could be amended to remove any defect, there are no grounds for reversing this order.

## DISPOSITION

The judgment of dismissal in favor of respondents and against Hartford is affirmed.  Respondents are entitled to recover costs on appeal.


_____
Jenkins, J.


We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.


18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| J.R. MARKETING, L.L.C. et al., <br><br>     Plaintiffs, Cross-defendants and Respondents, <br><br> v. <br><br> HARTFORD CASUALTY INSURANCE COMPANY, <br><br>     Defendant, Cross-complainant and Appellant. | A133750 <br><br> (San Francisco County <br>   Super. Ct. No. CGC-06-449220) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

    The opinion filed in the above-entitled matter on May 17, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

DATE:                                   _____

                                         Pollak, Acting P.J.

1

Trial Court:                                    San Francisco County Superior Court


Trial Judge:                                    Hon. Loretta Giorgi


Counsel for Cross-complainant and Appellant:    David M. Axelrad, Andrea A.
    Hartford Casualty Insurance Company         Ambrose
                                                HORVITZ & LEVY

                                                Dean B. Herman
                                                Catherine L. Rivard
                                                MENDES & MOUNT

                                                Ira G. Greenberg
                                                EDWARDS WILDMAN PALMER


Counsel for Respondent:                         Ethan A. Miller
    J.R. Marketing L.L.C. et al.                Barry D. Brown, Jr.
                                                Michelle M. Full
                                                SQUIRE SANDERS (US) LLP

                                                Pierre H. Bergeron