[No. G038728. Fourth Dist., Div. Three. June 26, 2008.]

TROY PETERSON et al., Plaintiffs and Appellants, v.
CELLCO PARTNERSHIP, Defendant and Respondent.

**COUNSEL**

Callahan, McCune & Willis, Robert W. Thompson and Douglas A. Wright for Plaintiffs and Appellants.

Jones Day, Thomas R. Malcolm, Marc K. Callahan and Edward S. Chang for Defendant and Respondent.

**OPINION**

**IKOLA, J.**—Plaintiffs Troy Peterson and Michael Jackson appeal from the judgment dismissing their case with prejudice after the court sustained the demurrers of defendant Cellco Partnership, doing business as Verizon Wireless, to plaintiffs' (1) unfair competition cause of action under Business and Professions Code section 17200 et seq.[1] (UCL) in their second amended complaint, and (2) unjust enrichment cause of action in their third amended complaint.[2] For the reasons explained below, we conclude the court properly sustained, without leave to amend, defendant's demurrer to (1) plaintiffs' UCL claim because plaintiffs failed to allege sufficient facts to support their standing to bring the claim, and (2) plaintiffs' unjust enrichment claim because it was based on alleged Insurance Code violations for which no private right of action exists and because plaintiffs received the benefit of the bargain.

## FACTS

In their second amended complaint, plaintiffs brought a class action against defendant alleging five causes of actions, including claims for unfair business practices under the UCL and unjust enrichment. Plaintiffs alleged that (1) defendant "is a communication equipment vendor pursuant to . . . Insurance Code section 1758.69"; (2) defendant offered and sold communication equipment (such as cell phones) and related insurance policies; (3) plaintiffs purchased cell phones and insurance from defendant; and (4) a percentage of each insurance premium paid by defendant's customers "was retained . . . or received by defendant as a fee . . . or monetary benefit to defendant from the . . . insurance provider." Plaintiffs further alleged defendant lacked a license (required under Ins. Code, § 1758.6) to offer or sell such insurance.

In their UCL cause of action, plaintiffs alleged defendant violated the UCL by, inter alia, offering and selling insurance while unlicensed to do so. Plaintiffs alleged they had standing to bring the claim because (1) they "suffered injury in fact because defendant . . . unlawfully retained . . . or received a percentage of the . . . insurance premiums paid by plaintiffs as a

---

[1] All statutory references are to the Business and Professions Code unless otherwise stated.

[2] Solely for purpose of assignment to the same panel, we have deemed this appeal to be related to *Simas v. Public Storage, Inc.* (June 26, 2008, G038750) (nonpub. opn.).

fee, monetary benefit . . . or recurring revenue stream, all of which plaintiffs have a legally protected ownership interest in that is concrete, particularized and actual"; (2) they "lost money" because defendant retained a percentage of the premium and the money was "no longer in plaintiffs' possession"; and (3) they "suffered injury in fact and lost money to defendant as a direct result of defendant's unlawful activities because if defendant had not offered [and] sold . . . insurance when it was not . . . licensed to do so, plaintiffs would not have purchased the . . . insurance from defendant."

In their unjust enrichment cause of action, plaintiffs alleged defendant was "unjustly enriched by its receipt . . . or retention of the fee, monetary benefit . . . or recurring revenue stream because defendant did not maintain the required license to offer . . . or sell the . . . insurance and was not lawfully entitled to receive . . . or retain any percentage of the . . . insurance premium . . . ."

Plaintiffs prayed, inter alia, for restitution of all funds acquired by defendant in violation of the UCL and "of all ill-gotten gains that have unjustly enriched defendant at the expense of plaintiffs."

Defendant demurred to the second amended complaint, arguing, inter alia, plaintiffs' UCL claim failed to state facts sufficient to constitute a cause of action because (1) under Proposition 64, "only a private plaintiff who '*has suffered injury in fact and has lost money or property as a result of such unfair competition*' may bring a" UCL claim, (2) plaintiffs' allegation that defendant "received a percentage of the [insurance] premium as a commission" "in no way shows that Plaintiffs incurred monetary loss, and therefore does not satisfy the standing requirements of Proposition 64," and (3) plaintiffs lacked "standing because the allegations of the complaint show that plaintiffs received the benefit of the bargain and have not lost money." Defendant asked the court to take judicial notice of the text of the official voter information guide to Proposition 64. As to plaintiffs' unjust enrichment claim, defendant's demurrer alleged plaintiffs failed to state facts sufficient to constitute a cause of action because plaintiffs received the benefit of the bargain and could not seek a windfall under the guise of restitution.

The court granted defendant's request for judicial notice and sustained, without leave to amend, the demurrer to plaintiffs' UCL cause of action because plaintiff had "been repeatedly unable to state facts supporting the

legal requirement of actual injury and pecuniary loss as required by Proposition 64."[3] The court overruled defendant's demurrer to plaintiffs' unjust enrichment cause of action.[4]

Defendant subsequently moved for judgment on the pleadings on plaintiffs' unjust enrichment claim in the second amended complaint—plaintiffs' "single remaining theory"—arguing, inter alia, the cause of action (1) was subject to Proposition 64's requirement that a private plaintiff have lost money and have suffered injury, and (2) was based on "alleged violations of insurance licensing statutes" for which there is no private right of action. The court granted the motion with leave to amend, relying on cases holding that no private cause of action exists for such violations of the Insurance Code.

Plaintiffs then filed a third amended complaint alleging solely an unjust enrichment cause of action, once again relying on Insurance Code section 1758.6's prohibition against a communications equipment vendor offering or selling insurance without a license, and claiming defendant was "unjustly enriched by the payment of the fee, commission, profit . . . or other form of monetary benefit because defendant . . . was not authorized to receive . . . or accept [such payments] as a result of the offer, sale . . . or transaction of communication equipment insurance [and] failed to maintain the proper license . . . ."

Defendant demurred to the third amended complaint, arguing the claim was "still fundamentally grounded in alleged violations of the Insurance Code." Defendant contended the "Legislature delegated enforcement of the

---

[3] The history of the pleadings that preceded plaintiffs' second amended complaint is as follows: The original complaint included claims for defendant's alleged violation of the UCL and of the Insurance Code. (Peterson was the sole plaintiff in the original and first amended complaints; Jackson was added as a plaintiff in the second amended complaint.) Defendant demurred to the original complaint on the basis (1) Peterson lacked standing to bring a UCL claim, and (2) "no private cause of action exists for violations of" the pertinent Insurance Code sections. Peterson chose not to oppose the demurrer to the original complaint. Instead he filed a first amended complaint containing only a UCL claim. Defendant demurred to this single cause of action in the first amended complaint. The court sustained the demurrer, with leave to amend, to the UCL claim because Peterson failed to allege "enough facts to support standing under Proposition 64 since he cannot show 'injury in fact.' "

[4] The court sustained, with leave to amend, defendant's demurrer to plaintiffs' remaining causes of action in the second amended complaint (which are not the subject of this appeal and as to which plaintiffs did not file an amended complaint). Plaintiffs have not challenged, either here or below, the court's refusal to grant leave to amend their UCL cause of action in the second amended complaint.

Insurance Code statutes governing communication equipment vendors to the Insurance Commissioner and chose not to create a cause of action for private plaintiffs." Defendant further argued plaintiffs could not "evade the Legislature's decision not to allow a private cause of action simply by omitting some references to some statutory citations, while still invoking the substance of those statutes."

The court sustained, without leave to amend, defendant's demurrer to plaintiffs' third amended complaint, stating: "The claim for unjust enrichment is based upon violations of the Insurance Code for which no private cause of action exists." The court dismissed plaintiffs' action with prejudice.

## DISCUSSION

*Standard of Review*

In evaluating a trial court's order sustaining a demurrer, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) In doing so, we accept as true all properly pleaded material facts, as well as facts that may be implied from the properly pleaded facts (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598]), and we also consider matters that may be judicially noticed (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394]). We do *not* assume the truth of contentions, deductions or conclusions of fact or law. (*Ibid.*) The plaintiff "bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law" and "must show the complaint alleges facts sufficient to establish every element of [the] cause of action." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354].) "Because standing goes to the existence of a cause of action, lack of standing may be raised by demurrer . . . ." (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 813 [66 Cal.Rptr.3d 543].)

*The Court Properly Sustained Defendant's Demurrer to Plaintiffs' UCL Claim*

Plaintiffs contend their second amended complaint "alleged facts sufficient to establish standing to bring their UCL claims," arguing (1) their alleged payment of an "unlawful commission . . . represents a distinct and palpable 'injury in fact' sufficient to provide standing for their UCL claims"; (2) they alleged "facts showing they lost money as a result of [defendant's] illegal

business practice"; and (3) they "alleged facts demonstrating the causal connection between [defendant's] unlawful business practice and the 'lost money.' " Alternatively, they argue "that a violation of the . . . Insurance Code creates a cause of action for unfair business practices."

■ The UCL prohibits, inter alia, "any unlawful, unfair or fraudulent business act or practice . . . ." (§ 17200.) In order to give substance to this prohibition, a UCL action " ' "borrows" violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices . . . .' " (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383 [6 Cal.Rptr.2d 487, 826 P.2d 730].) Here, plaintiffs' UCL claim was predicated on allegations defendant violated the Insurance Code by selling cell phone insurance without a license.

■ The court sustained defendant's demurrer to plaintiffs' UCL cause of action for lack of standing. Section 17204 of the UCL governs a plaintiff's standing to assert a UCL claim. (§§ 17204, 17203.) Prior to the enactment of Proposition 64 in November 2004, the UCL "did not predicate standing 'on a showing of injury or damage' " and was thus "subject to abuse by attorneys who used it as the basis for legal ' "shakedown" ' schemes" and frivolous lawsuits. (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 812 [66 Cal.Rptr.3d 543] (*Buckland*); see *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228 [46 Cal.Rptr.3d 57, 138 P.3d 207].) To address this problem, Proposition 64 amended section 17204 to accord standing only to certain specified public officials and to any person who " ' "has suffered injury in fact and has lost money or property as a result of such unfair competition." ' " (*Buckland*, at p. 812; see § 17204.) Thus, in the aftermath of Proposition 64, only plaintiffs who have suffered actual damage may pursue a private UCL action. A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition. (§ 17204; *Buckland*, at p. 817.)

■ Plaintiffs contend they asserted sufficient facts to meet both requirements for standing under section 17204. The first requirement—"injury in fact"—is defined in *Buckland* as a " ' "distinct and palpable injury" ' " suffered " 'as a result of the defendant's actions.' " Alternatively, *Buckland* articulates another definition of " 'injury in fact' " as " 'an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " [citations].' " (*Buckland, supra*, 155 Cal.App.4th at p. 814.) Plaintiffs assert they

met both definitions, having suffered distinct and palpable injury and the concrete and actual invasion of a legally protected interest, because they paid the alleged unlawful commission that was illegally retained or received by defendant as a percentage of plaintiffs' insurance payments.

To support their assertion they suffered injury in fact, plaintiffs rely on *Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796 [49 Cal.Rptr.3d 555] (*Aron*), where the plaintiff Aron rented a truck from U-Haul. At the time, U-Haul supplied each customer with a partially fueled truck and required the customer (in order to avoid refueling charges) to return the truck with the prerental amount of fuel, measured solely by the fuel gauge. (*Id.* at pp. 800–801.) Aron alleged he returned the truck to U-Haul "with more fuel than he was provided" and "asked for credit or reimbursement for the excess fuel but was refused." (*Id.* at p. 801.) He alleged " 'injury in fact' "—an "economic loss"—because, in the absence of a precise gauge, "the only way to avoid the imposition of U-Haul's charge was to overfill the fuel tank." (*Id.* at pp. 802–803.) He further alleged "the use of the fuel gauge as the instrument of measurement" did not comply with California law on weights and measurements. (*Id.* at p. 803.) The appellate court held Aron had standing to file a UCL complaint because his "allegations set forth a basis for a claim of actual economic injury as a result of an unfair and illegal business practice." (*Ibid.*)

■ Plaintiffs contend there "is essentially no difference between Aron being required to pay for excess fuel (standing granted) and [plaintiffs] here being required to pay an unlawful commission." Not so. There is a difference and it is a decisive one. Aron suffered "actual economic injury": Due to U-Haul's imprecise measuring system, he paid more to refuel the truck than required under the rental agreement. (*Aron, supra,* 143 Cal.App.4th at p. 803.) In other words, Aron could have paid less to rent the truck had U-Haul employed an accurate measuring system. In contrast, plaintiffs here do not allege they paid more for the insurance due to defendant's collecting a commission. They do not allege they could have bought the same insurance for a lower price either directly from the insurer or from a licensed agent. Absent such an allegation, plaintiffs have not shown they suffered actual economic injury. Rather, they received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price. (*Medina v. Safe-Guard Products, Internat., Inc.* (2008) 164 Cal.App.4th 105 [78 Cal.Rptr.3d 672] [insurance policy sold by unlicensed insurer is nevertheless enforceable by the insured].)

Instructive here is *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847 [70 Cal.Rptr.3d 466] (*Hall*), where the plaintiff Hall based his UCL claim on allegations a book seller deceptively sent buyers invoices to pay for a book during a free trial period. (158 Cal.App.4th at p. 850.) Hall received the book, kept it, and did not make payment until after the free trial period expired. (*Id.* at pp. 850–851.) A different panel of this court held Hall lacked standing to pursue his UCL claim. (158 Cal.App.4th at p. 849.) Hall "did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it." (*Id.* at p. 855.) So too, in the instant case, plaintiffs do not allege they were dissatisfied with the insurance or were uninformed of its price. Indeed, in their fraud claim in the second amended complaint, plaintiffs acknowledged defendant disclosed to them "the price and extent of the insurance coverage."

Because plaintiffs failed to allege facts showing injury in fact, we need not address their assertion they met the second requirement for standing—i.e., they lost money as a result of the alleged unfair competition—except to briefly discuss the meaning of the phrase "lost money" in section 17204. In plaintiffs' view, a person has lost money when the money is "no longer in their possession." But this proposed definition encompasses every purchase or transaction where a person pays with money. In *Hall*, we defined a loss, for purposes of section 17204, as " '[a]n undesirable outcome of a risk; the disappearance or diminution of value, usu. in an unexpected or relatively unpredictable way.' " (*Hall, supra*, 158 Cal.App.4th at p. 853.) Thus, in *Hall*, the plaintiff "expended money by paying [the seller] $29.51—but he received a book in exchange"; therefore he did not lose money or suffer injury in fact. (*Id.* at p. 855.)

Alternatively, plaintiffs argue that, even if they lack the standing prescribed in section 17204, they may bring a UCL action because "a violation of the . . . Insurance Code give[s] rise to a cause of action for violation of the UCL." For this proposition they rely on *Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466 [37 Cal.Rptr.3d 544] and *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594 [89 Cal.Rptr.2d 370]. We note that the existence of a cause of action does not answer the question of who has standing to bring the claim. And in any case, both *Stevens* and *Wayne* are inapposite. The *Stevens* decision was final prior to the 2004 adoption of Proposition 64. *Wayne* did *not* address the issue of the plaintiff's standing to bring a UCL claim. Rather, *Wayne* considered whether the defendant was exempt from the Insurance Code's licensing requirements under a statutory exception. (*Wayne*, at pp. 477–478.) In *Wayne*, the defendant charged the plaintiff an insurance premium that was twice as high as the amount the

defendant paid the shipper (who contracted with the insurer). (*Id.* at p. 472.) The issue in *Wayne* was whether that "100 percent markup" constituted a commission within the meaning of Insurance Code section 1635 (which allows certain persons to sell insurance without a license so long as no commission is paid). (*Wayne*, at p. 478.) Thus, neither *Stevens* nor *Wayne* supports plaintiffs' implied assertion that section 17204 does not apply to UCL claims predicated on Insurance Code violations.

*The Court Properly Sustained Defendant's Demurrer to Plaintiffs' Unjust Enrichment Claim*

Plaintiffs contend they "properly pled facts to support their cause of action for quasi-contract-unjust enrichment" in their third amended complaint, relying on the following pleadings: (1) plaintiffs "conferred a benefit upon" defendant; (2) defendant "knowingly accepted and retained the benefits"; (3) defendant "has been unjustly enriched by the benefit conferred by" plaintiffs; and (4) "it would [be] unjust and unconscionable to permit [defendant] to be enriched at [plaintiffs'] expense."

The elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." (*Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726 [91 Cal.Rptr.2d 881].) Here, plaintiffs received the benefit of the bargain.[5] "[T]he 'mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.' " (*Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 134 [226 Cal.Rptr. 321].) "There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." (*Comet Theatre Enterprises v. Cartwright* (9th Cir. 1952) 195 F.2d 80, 83.)

But plaintiffs assert they need not allege any actual damage to state an unjust enrichment claim. For this proposition they rely on the recent case of *County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533 [69 Cal.Rptr.3d 848] (*San Bernardino*). *San Bernardino* involved "a political

---

[5] Plaintiffs contend the insurance policy "was actually worth less than what they paid for [it]" because defendant "extracted a percentage of [their] payment." As discussed above, absent an allegation by plaintiffs that they could have bought the same policy elsewhere for a lower price, they suffered no actual injury. Moreover, an insurance policy is enforceable by the insured despite the unlicensed status of the insurer. (*Medina v. Safe-Guard Products, Internat., Inc., supra,* 164 Cal.App.4th 105.)

corruption scandal" where certain San Bernardino County officials accepted bribes from contractors (and their consultants) who then obtained profitable, often no-bid, contracts with the county. (*Id.* at pp. 537–539.) "[I]n an effort to recover damages suffered as a result of the bribery," the county sued various defendants, including consultants who received lucrative fees from contractors. (*Id.* at p. 537.)

On appeal the defendants challenged an unjust enrichment award against them, arguing the county "did not incur any damage from the bribery scheme because the County's money was not used to pay the bribes." (*San Bernardino, supra*, 158 Cal.App.4th at p. 541.) In affirming the award, the appellate court stated in dicta the passage upon which plaintiffs here rely: " '[T]he public policy of this state does not permit one to "take advantage of his own wrong" ' regardless of whether the other party suffers actual damage. [Citation.] Where 'a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust . . . the defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched.' " "The emphasis is on the wrongdoer's enrichment, not the victim's loss. In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again." (*Id.* at p. 542.)

But despite the court's dictum statements that an unjust enrichment victim need not suffer any loss, the evidence in *San Bernardino, supra*, 158 Cal.App.4th 533, showed "the County suffered a monetary loss" of "millions of dollars" (*id.* at p. 541), and the money "awarded to the County . . . was rightfully the County's." (*Id.* p. 543.) For, although the county did not directly pay the consultants, the county was the ultimate "source of the money" and "it [could] fairly be said that the entire bribery scheme was 'at the expense' of the County and its residents." (*Id.* at p. 544.)

In another distinguishing point, *San Bernardino* clarified that "[d]isgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty, and is a logical extension of the principle that public officials and other fiduciaries cannot profit by a breach of their duty." (*San Bernardino, supra*, 158 Cal.App.4th at p. 543.) In sum, *San Bernardino*'s holding does not support plaintiffs' assertion they need not allege any actual injury to bring an unjust enrichment claim.

■ Moreover, *San Bernardino* recognized the maxim that restitution should be required only when it " 'involves no violation or frustration of law or opposition to public policy, either directly or indirectly.' " (*San Bernardino, supra*, 158 Cal.App.4th at p. 542.) To permit plaintiffs to pursue their claim under the label "unjust enrichment" would allow them to circumvent the law and public policy reflected in (1) section 17204's mandate that only an injured plaintiff may assert a private action under the UCL, and (2) the Legislature's decision *not* to create a private right of action for violations of the Insurance Code sections relevant to this case. As to this second point, plaintiffs do not contend that a private right of action exists for pertinent Insurance Code violations, nor can they. ■ Insurance Code section 1758.65 grants the Commissioner the power to enforce the relevant sections of the Insurance Code. ■ A "statute creates a private right of action only if the statutory language or legislative history affirmatively indicates such an intent." (*Farmers Ins. Exchange v. Superior Court* (2006) 137 Cal.App.4th 842, 850, 853 [40 Cal.Rptr.3d 653] [Ins. Code, § 1861.10 creates no private right of action].) "Particularly when regulatory statutes provide a comprehensive scheme for enforcement by an administrative agency, the courts ordinarily conclude that the Legislature intended the administrative remedy to be exclusive unless the statutory language or legislative history clearly indicates an intent to create a private right of action." (*Farmers Ins. Exchange*, at p. 850.)

■ But plaintiffs argue their unjust enrichment claim is not based solely on "breach" of the Insurance Code. In examining this contention, we look beyond the claim's label, which is not dispositive when reviewing a trial court's sustaining of a general demurrer. (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387 [20 Cal.Rptr.3d 115].) Instead we focus on the complaint's "actual gravamen" (*ibid.*), on its "*facts alleged.*" (*Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.* (2002) 95 Cal.App.4th 1273, 1281 [116 Cal.Rptr.2d 370].) The gravamen of plaintiffs' unjust enrichment claim in their third amended complaint is that defendant was "unjustly enriched by the payment of the fee" because defendant (1) was not properly licensed or "authorized" to offer or sell insurance, (2) failed to properly train and list its employees authorized to offer insurance, and (3) "unlawfully retained . . . a percentage of the money paid by" plaintiffs. These allegations—that defendant acted improperly, unlawfully, and without authority—can only be predicated on plaintiffs' implied assertion defendant failed to comply with the Insurance Code. Plaintiffs point us to no other basis for their allegation defendant acted wrongfully, and indeed, their allegations track requirements imposed by Insurance Code sections 1758.6 and 1758.63.[6]

---

[6] Plaintiffs contend "several of [their] factual allegations have no bearing whatsoever on whether the . . . Insurance Code was violated," pointing to their allegation defendant failed "to expend [any] financial resources to properly train [its] employees" authorized to offer insurance on its behalf. In fact, Insurance Code section 1758.63 requires a vendor to "provide"

Although plaintiffs excised from their third amended complaint most express references to the Insurance Code, they retained the explicit allegations that (1) "defendant is a communication equipment vendor [under] Insurance Code section 1758.69" and (2) "Insurance Code section 1758.6" prohibits a communications equipment vendor from offering or selling insurance unless the vendor is licensed pursuant to "Article 3 (commencing with [Insurance Code] section 1631)." In sum, the facts alleged in the third amended complaint reveal plaintiffs' cause of action is founded on sections of the Insurance Code for which no private right of action exists.

Plaintiffs contend *San Bernardino, supra*, 158 Cal.App.4th 533, "found proper an award of damages, on the basis of unjust enrichment, for violation of . . . Government Code section 1090, which does not contain a private right of action."[7] In fact, *San Bernardino* involved two appeals. (158 Cal.App.4th at pp. 537–538.) The first appeal dealt with an unjust enrichment claim. (*Id.* at p. 541.) The other appeal included a Government Code section 1090 claim where the defendants did not challenge the trial court's finding they violated the statute or the county's standing to bring the claim. (158 Cal.App.4th at pp. 547, 549.)

Finally, plaintiffs assert *Hirsch v. Bank of America* (2003) 107 Cal.App.4th 708 [132 Cal.Rptr.2d 220] is similar to this case, but in fact it is not. *Hirsch* held, inter alia, the plaintiffs there "stated a valid cause of action for unjust enrichment based on [the defendant's] unjustified charging and retention of excessive fees" which were passed on to the plaintiffs. (*Id.* at p. 722.) Thus, *Hirsch* involved plaintiffs who alleged they paid "overcharges" in the form of excessive fees that were unjustly retained by the defendants at the plaintiffs' expense. (*Ibid.*) This point, *Hirsch*'s only pertinence to the case before us, is a conclusively distinguishing one.

Plaintiffs lack standing to bring an action under the UCL or under the Insurance Code, and they cannot do so under the guise of unjust enrichment. Moreover, they are not entitled to restitution because they received the benefit of the bargain. The court properly sustained, without leave to amend, defendant's demurrer to plaintiffs' third amended complaint.

---

such training, a mandate which entails sufficient funding. This exemplifies the weakness of plaintiffs' attempts to distance their allegations from the Insurance Code.

[7] Plaintiffs provide no authority for their assertion a private right of action does not exist for violation of Government Code section 1090.

## DISPOSITION

The judgment is affirmed. Defendant shall recover its costs on appeal.

Sills, P. J., and Aronson, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 1, 2008, S165714. Kennard, J., did not participate therein.