DEAN D. PREGERSON, UNITED STATES DISTRICT JUDGE
*876 Presently before the court is Defendants' Motion to Dismiss. Having considered the parties' submissions, the court adopts the following Order.
I. BACKGROUND
Plaintiff Jerald Friedman ("Friedman") brings this putative class action against defendants AARP, Inc., AARP Services Inc., AARP Insurance Plan, UnitedHealth Group, Inc., and United Healthcare Insurance Company (collectively, "Defendants"). (Complaint, ¶¶ 22-30.) The court has already set forth the basic facts of the case in its prior Order, (Dkt. No. 50), which it repeats here in relevant part:
In 2011, Friedman purchased a type of health insurance policy, known as a "Medigap" policy, which is designed to offer extra coverage to Medicare beneficiaries beyond the basic Medicare benefits, including coverage of copays and deductibles that would otherwise be the patient's responsibility. (Id. ¶ 35.) Friedman purchased a Medigap policy that was endorsed by AARP, with UnitedHealth as the insurer. (Id. ¶¶ 22, 37.) All UnitedHealth Medigap policies are endorsed by AARP. (Id. ¶ 37.) For every AARP/UnitedHealth Medigap policy sold, AARP receives a payment of 4.95% of the amount paid by the insured individual. (Id. ¶ 11.)
On behalf of a putative class, Friedman alleges that AARP improperly acts as an unlicensed insurance agent in actively soliciting insurance purchases for Medigap policies on behalf of UnitedHealth. (Id. ¶¶ 11, 52, 55-57, 71-75.) AARP is not a licensed insurance agent in California. (Id. ¶ 11.) Friedman alleges, however, that the 4.95% payment that AARP receives on every AARP/UnitedHealth Medigap policy is an unlawful insurance commission, paid to AARP for its role in "selling" the Medigap policies. (Id. ¶ 51.) Though Defendants' agreements cast this payment as a royalty, paid in exchange for UnitedHealth's use of AARP's intellectual property in marketing and selling its Medigap coverage, Friedman alleges that this characterization of the 4.95% payment is false. (Id. ) Friedman alleges that "while Defendants disclose the existence of a payment in general to AARP which they term a 'royalty' paid for the use of AARP's intellectual property, Defendants hide the fact that the cost of AARP Medigap insurance includes a percentage-based commission to AARP that is funded by consumers, in addition to the insurance premium paid to UnitedHealth for coverage." (Id. ¶ 66.)
As a result, Friedman contends that he paid more for his Medigap policy than he would have paid if he had known that 4.95% went to an illegal commission. (Id. ¶¶ 14, 15, 19, 22.) Friedman further alleges that other insurance companies offer comparable plans at lower cost because the premiums for those plans do not include an unlawful 4.95% commission. (Id. ¶ 16.) He contends that this arrangement violates various provisions of the California Insurance Code, and therefore that he has a basis to bring a Unfair Competition Law claim under California Business & Professions Code § 17200 et seq.[1]
*877 On the basis of these allegations, Friedman filed a putative class action, asserting claims under the UCL as well as for money had and received and conversion. (See Compl.) Subsequently, Defendants filed a Motion to Dismiss under Rule 12(b)(6). (Dkt. 27.) This court granted the Motion, and dismissed the Complaint with prejudice. (Dkt. 50.) Friedman appealed the dismissal to the Ninth Circuit. (Dkt. 51.) The Ninth Circuit reversed the court's order dismissing the Complaint, and remanded the case to this court so that it could address Defendants' remaining arguments in its Motion to Dismiss regarding the application of the filed-rate doctrine to Friedman's claims. (Dkt. 54.)
II. LEGAL STANDARD
A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes , 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678, 129 S.Ct. 1937 (citations and internal quotation marks omitted).
"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679, 129 S.Ct. 1937. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly , 550 U.S. at 555, 127 S.Ct. 1955. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal , 556 U.S. at 679, 129 S.Ct. 1937.
III. DISCUSSION
The threshold issue before the court on remand is whether Friedman's claims are barred by a California filed-rate doctrine. Under this doctrine, "rates duly adopted by a regulatory agency are not subject to collateral attack in court." MacKay v. Superior Court , 188 Cal.App.4th 1427, 115 Cal.Rptr.3d 893, 910 (2010). The parties dispute whether a filed-rate doctrine exists under California law and, if so, the whether it applies to bar Friedman's claims.
A. Whether Friedman's Claims Are Barred by a State Filed-Rate Doctrine
As the court noted in its previous order, "there is currently a split of authority on the issue of whether there exists a general state filed rate doctrine in California." (Dkt. 50 at 4 n.2). Defendants argue that a state filed-rate doctrine bars Friedman's claims because he challenges insurance rates approved by a state agency, the California Department of Insurance (DOI). Defendants' key authority in support of a filed-rate doctrine for state insurance rates comes from *878 MacKay v. Superior Court , 188 Cal.App.4th 1427, 115 Cal.Rptr.3d 893 (Ct. App. 2010). In MacKay , the plaintiff alleged that the insurer had not properly considered certain factors in rate-setting, although the rating factors had been duly approved by DOI. Id. at 1436-37, 115 Cal.Rptr.3d 893. The court found that such a challenge was barred by Section 1860.1 of the California Insurance Code, a provision that is not at issue here. Id. at 1432-33, 115 Cal.Rptr.3d 893. Section 1860.1 functions, in essence, as a statutory analog to the filed-rate doctrine, preventing collateral challenges to DOI-approved rates in the courts. See Cal. Ins. Code § 1860.1 (exempting from "any other law of this State ... which does not specifically refer to insurance" any "act done, action taken or agreement made pursuant to the [ratemaking] authority conferred by this chapter.").[2]
Having found that Section 1860.1 precluded the plaintiff's claims, the MacKay court went on to reason that its holding was consistent with the operation of a state filed-rate doctrine. 188 Cal.App.4th at 1448-49, 115 Cal.Rptr.3d 893. The court observed that "numerous state courts have applied the filed-rate doctrine to approved insurance rates," and indicated that a state filed-rate doctrine could apply to rates approved by DOI. Id. The court also carefully delimited the scope of this prohibition to exclude those cases where "the underlying conduct challenged was not the charging of an approved rate."[3] Id. at 1449-50, 115 Cal.Rptr.3d 893.
Here, even assuming arguendo that a state filed-rate doctrine exists in the insurance context, it does not bar Friedman's claims because these claims are more akin to challenges to Defendants' alleged misrepresentations, rather than challenges to the approved rate, or challenges to whether the rate is reasonable in light of the statutorily prescribed loss ratios for Medigap insurance.[4] The Complaint alleges that "Defendants' misrepresentations and omissions regarding AARP Medigap constitute an unfair, deceptive, and misleading practice" under the UCL. (Compl. ¶ 69). Had Defendants disclosed the fact that the "member contribution amount" included an embedded commission payment to the AARP, Friedman claims that he would have sought out another Medigap policy offering the same services for a lower rate. (Compl. ¶ 19). As the court held in Canon v. Wells Fargo , "the gravamen of the complaint is not the premium rate per se, but *879 the failure to disclose the allegedly fraudulent nature of the commission charged to borrowers." No. C-12-1376 EMC, 2014 WL 324556, at *6 (N.D. Cal. Jan. 29, 2014). In other words, the DOI's rate "determination is different from what is at issue here-whether the lender committed fraud on the borrower by mischaracterizing the nature of the charges." Id. at *5. For this reason, the court concludes that addressing Friedman's claims would not usurp the authority of the DOI to determine the reasonableness of filed rates.
Defendants counter that the DOI was aware of the alleged commission payments to the AARP as part of its review of the Medigap rates. (Defs.' Supp. Br. at 12). Even if that were so, it does not mean that DOI ratified the existence or amount of the AARP payments. Pursuant to state regulations, DOI approves the overall Medigap rate in accordance with statutorily prescribed loss ratios. See 42 U.S.C. § 1395ss(r) ; Cal. Ins. Code § 10192.14(a)(1)(A). Defendants acknowledge that "[a]side from requiring [that] benefit payments constitute at least 75% of premium revenue, the state and federal Medigap policies do not dictate how insurers may spend the remaining premium revenue." (Defs.' Supp. Br. at 13). As the California Insurance Commissioner has observed, "[c]ommissions have traditionally been recognized as an appropriate component of insurance ratemaking, so long as the overall rate does not exceed the maximum or minimum permitted earned premium under the regulations." Cannon, 2014 WL 324556, at *5. Thus, the challenged commission payments appear to fall outside of the scope of the DOI's regulatory approval of rates. To the extent that a filed-rate doctrine exists in California, the court concludes that such a doctrine would not apply to the challenged conduct in this case.
Nor would a similar doctrine, the primary jurisdiction doctrine, serve to bar Friedman's claims. Primary jurisdiction arises when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." Farmers Ins. Exchange v. Superior Ct. , 2 Cal. 4th 377, 390, 6 Cal.Rptr.2d 487, 826 P.2d 730 (1992) (en banc). Primary jurisdiction suspends the judicial process pending a referral to the administrative body, which "allows courts to take advantage of administrative expertise" and "assure uniform application of regulatory laws." Id. Yet Friedman does not challenge the DOI's ratemaking procedures or other areas within the specialized competence of the agency. Rather, the standards to be applied under the UCL "are within the conventional competence of the courts." Id. For this reason, the court finds that a referral to DOI would be inapposite, and that the primary jurisdiction doctrine does not apply to Friedman's claims.
B. Whether Friedman Has Standing
In addition to the filed-rate issue, Defendants raise several corollary issues tied to Friedman's standing to bring the present action. Under the UCL, a plaintiff must have "suffered injury in fact and ... lost money or property" as a result of the alleged violations. See Kwikset Corp. v. Sup. Ct., 51 Cal.4th 310, 321, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011). Defendants argue that Friedman suffered no economic harm because he paid the DOI-approved rate as his "member contribution amount." (Defs.' Supp. Br. at 13). Because Defendants must charge the DOI-approved rate, they claim that Friedman could not have paid less for their services.
Yet Friedman's theory of economic injury is not limited to the rate charged for *880 Defendants' services. According to the Complaint, "similar Medigap policies offered without the 'AARP brand' offer identical benefits often at a lower cost in part because those insurers do not secretly charge unlawful insurance agent commissions to consumers." (Compl. ¶¶ 16, 77). Put differently, "Medigap policies across carriers contain identical terms set by the federal government, [so] the only real differentiating factor between Medigap policies with different carriers is the price." (Pl.'s Opp. Br. at 23, Dkt. 38). Friedman reasons that, had the fee to AARP been disclosed, he would have sought out another Medigap policy offering the same benefits for a lower cost. (See Compl. ¶¶ 19, 80.) See also Ninth Circuit Oral Argument, Friedman v. AARP , at 14:00 (Oct. 19, 2016), https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000010378.
At this early stage of the litigation, the court finds Friedman's allegations are sufficient to state an injury arising from Defendants' actions. Defendants' cases involving the payment of fees to unlicensed insurance agents do not disturb this conclusion. See Medina v. Safe-Guard Prods. , 164 Cal.App.4th 105, 114, 78 Cal.Rptr.3d 672 (Ct. App. 2008) ; Peterson v. Cellco P'ship , 164 Cal.App.4th 1583, 1591-92, 80 Cal.Rptr.3d 316 (Ct. App. 2008). That is because here, unlike in those cases, it may be reasonably inferred from the Complaint that Friedman "could have bought the same insurance for a lower price" from a licensed agent elsewhere. Peterson , 164 Cal.App.4th at 1591, 80 Cal.Rptr.3d 316.
On the other hand, Friedman no longer holds a Medigap policy with Defendants.[5] (DiMatteo Decl. ¶ 3, Dkt. 27-1). Friedman's standing to seek relief "must be shown with respect to each form of relief south," including injunctive relief. Bates v. United Parcel Servs., Inc. , 511 F.3d 974, 985 (9th Cir. 2007). Friedman's "past exposure to illegal conduct" alone does not confer standing to pursue injunctive relief. City of L.A. v. Lyons , 461 U.S. 95, 95-96, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Because Friedman no longer holds a Medigap policy with Defendants, there is no likelihood of future harm resulting from Defendants' challenged practices in this case. Accordingly, the court concludes that Friedman lacks standing to seek injunctive relief, and dismisses his request for injunctive relief with prejudice.
C. Defendants' Additional Challenges
Defendants raise two additional challenges in their Motion to Dismiss. First, Defendants challenge whether Friedman's request for disgorgement is permitted under the UCL. The UCL generally limits relief to injunctions and restitution. Korea Supply Co. v. Lockheed Martin Corp. , 29 Cal.4th 1134, 1144, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003). Thus, disgorgement "is an available remedy... only to the extent that it constitutes restitution." Id. at 1145, 131 Cal.Rptr.2d 29, 63 P.3d 937. In Korea Supply , the California Supreme Court held that the UCL did not allow for disgorgement when "the money sought to be disgorged was not taken from plaintiff and plaintiff did not have an ownership interest in the money." Id. at 1144, 131 Cal.Rptr.2d 29, 63 P.3d 937. Here, the Complaint requests "disgorgement of all sums taken ... by means of deceptive practices, together with all proceeds, interest, income, profits and accessions thereto." (Compl. ¶¶ 115, 116.C). The Complaint also contains a separate request for restitution of "all money or other property *881 taken from identifiable persons by means of unlawful acts or practices." (Compl. ¶ 116.B). Because Friedman's request for disgorgement is not limited to the restitution of amounts paid to Defendants, the court dismisses Friedman's additional request for disgorgement with prejudice.
Finally, Defendants argue that the Complaint does not adequately differentiate between the actions of Defendant United Health Group ("UHG") and its "operating division and corporate subsidiary" Defendant United Healthcare Insurance Company ("UHC"). At this juncture in the litigation, the court finds that Friedman has set forth a basis for the inclusion of the parent company UHG, and that the Complaint's allegations adequately provide UHG with notice of the claims brought against it. Therefore, the court denies Defendants' motion to dismiss UHG as a defendant in this action.
IV. CONCLUSION
For the reasons stated above, Defendants' Motion to Dismiss is DENIED in part and GRANTED in part. The court hereby DISMISSES Plaintiff's request for injunctive relief and disgorgement, (Compl. ¶¶ 115, 116.A, 116.C.), with prejudice.
IT IS SO ORDERED.

Plaintiff also includes class allegations that go to the Rule 23 requirements for class actions. None of those allegations is disputed in the Motion, and therefore those facts are not included here.

In Loeffler , the California Supreme Court referenced MacKay as an example of when "an action may not lie under the UCL because another statutory scheme [i.e. Section 1860.1 ] provides the exclusive means for resolving disputes. Loeffler v. Target Corp. , 58 Cal. 4th 1081, 1126, 171 Cal.Rptr.3d 189, 324 P.3d 50 (2014).

Conversely, some courts have concluded that no state filed-rate doctrine may exist. In Fogel v. Farmers Group, Inc ., 160 Cal.App.4th 1403, 74 Cal.Rptr.3d 61 (Ct. App. 2008), the plaintiff alleged unfair business practices in the collection of attorney-in-fact fees, which were taken out of insurance premiums the plaintiff had paid. Id. at 1406, 74 Cal.Rptr.3d 61. The Fogel court concluded that this claim was not barred by Section 1860.1, as the challenged actions were not performed "under the authority conferred" by the rate-making chapter of the California insurance code. Id. at 1416, 74 Cal.Rptr.3d 61. It further held that California's "prior approval system," whereby rates are approved by DOI upon application by the insurer, did not support the existence of a state filed-rate doctrine that would bar relief in the form of "premium refunds" or rebates. Id. at 1418, 74 Cal.Rptr.3d 61.

See Cal. Ins. Code § 10192.14(a)(1)(A) (stating that Medigap insurance must be expected to "return to policyholders and certificate holders in the form of aggregate benefits, not including anticipated refunds or credits, provided under the policy form or certificate form at least 75 percent of the aggregate amount of premiums earned in the case of group policies").

"In ruling on a 12(b)(1) jurisdictional challenge, a court may look beyond the complaint and consider extrinsic evidence." Warren v. Fox Family Worldwide, Inc. , 328 F.3d 1136, 1141 n.5 (9th Cir. 2003).