Filed 11/21/22 The Law Firm of Kallis & Associates v. Padgett CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE LAW FIRM OF KALLIS & ASSOCIATES, P.C. et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>JOSEPH P. PADGETT,<br><br>     Defendant and Respondent. | H046063<br>(Santa Clara County<br>Super. Ct. No. 16CV298149) |

The Law Firm of Kallis & Associates, P.C. and Bustamante & Gagliasso, APC (collectively Law Firms) appeal a summary judgment ruling in their 2016 action to recover attorney fees from former client Joseph P. Padgett. Law Firms challenge the dismissal of their 2016 quantum meruit and restitution causes of action as time-barred.

We reject Law Firms' arguments that the quantum meruit cause of action accrued either in 2017 (when Padgett voided the retainer and general fee agreement) or in 2015 (when Padgett appealed a federal court attorney fees award for Law Firms' services). As we will explain, the quantum meruit claim accrued when Padgett discharged Law Firms in 2013, and Law Firms forfeited their challenge to the statute of limitations ruling related to the restitution cause of action. Alternatively, we conclude that Law Firms failed to establish the elements of a restitution claim. We will affirm the judgment.

# I. BACKGROUND[1]

*Federal Court Proceedings*

In 2004, Padgett and his then wife filed a civil rights action in federal court against the City of Monte Sereno and several city officials. Law Firms and the Padgetts executed a retainer and general fee agreement in September 2008, and Law Firms substituted in as counsel in the federal court action. Several claims were dismissed or bifurcated, and certain claims against two individual defendants were tried to a jury in 2009. The jury returned a verdict in favor of Padgett on a claim against one defendant. Padgett was awarded $1 in nominal damages and $10,000 in remitted punitive damages.

Padgett moved under title 42 United States Code section 1988 for $900,000 in costs and attorney fees exceeding $3.4 million (for pretrial work performed by a different firm, and for pretrial, trial, and appellate work performed by Law Firms). The district court ordered the liable defendant to pay $100,000 in costs and $500,000 in attorney fees. In February 2013, the Ninth Circuit Court of Appeals vacated the order and remanded the matter "for an explanation of how [the district court] used the lodestar method to reduce Padgett's fees and how it calculated Padgett's reduced costs."

In July 2013, Padgett notified Law Firms that he was terminating their services effective immediately, and instructed the firms "to take no further action in my name or on my behalf." A status conference on remand was held in October 2013. The district court relieved Law Firms from representing Padgett at that time. At the same time, the district court informed Padgett that "once the client makes the request [for statutory attorney fees], the attorney's fees actually belong to the attorneys," citing a Ninth Circuit case involving attorney fees in qui tam actions. Padgett remained in the case as an

---

[1] We grant Law Firms' request for judicial notice of the superior court records in this case (items 1, 10, 11.1, 11.2, 14-19) and the district court records in underlying civil rights litigation (items 2-9, 20). (Evid. Code, § 452, subd. (d).) The request for judicial notice of statutes and case law (items 21-23) is denied as unnecessary.

unrepresented party, and Law Firms pursued their attorney fees in the federal case as real parties in interest.

In March 2015, the district court awarded Padgett $100,000 in costs and $471,057 in attorney fees for Law Firms' services. Using the lodestar method, the court found reasonable attorney fees to be $1,682,345 ($1,047,888 for the Bustamante firm's services and $634,458 for the Kallis firm's services). It adjusted the award downward to reflect Padgett's limited success in the litigation (out of seven claims against eight defendants, only two claims against two defendants had survived summary judgment). Padgett appealed that order, challenging Law Firms' standing to pursue attorney fees after being terminated. Distinguishing civil rights cases from qui tam actions, the Ninth Circuit remanded the matter for the district court to determine whether a contractual provision or attorney's lien justified the award to counsel rather than to Padgett. On remand, the district court found that an enforceable fee agreement existed at the time it issued its March 2015 order, and the fee award was therefore required to be paid to counsel.

*The Underlying Superior Court Action*

While the federal appeal was pending, in July 2016 Law Firms filed the instant action in the superior court, seeking payment for services rendered. The first amended complaint alleged causes of action for breach of contract; restitution by unjust enrichment; quantum meruit; promissory estoppel; account stated; and declaratory relief. Law Firms sought $520,586 in "[a]ctual [d]amages," which they alleged was the district court's "ultimate[] award[] [of] fees and costs." (We note the unexplained discrepancy between the $520,586 figure and the district court's 2015 award of $471,057 in attorney's fees and $100,000 in costs.) They also sought quantum meruit damages in the amount of $1,682,345.

In January 2017, Padgett notified Law Firms in writing that the 2008 fee agreement violated Business and Professions Code section 6147 (governing contingency fee agreements between lawyers and clients), and Padgett declared the contract "void"

3

under subdivision (b) of that section. Padgett demurred to the operative first amended complaint and cross-complained for declaratory relief. The demurrer was sustained as to promissory estoppel. Padgett moved for summary judgment on the remaining causes of action on grounds that the fee agreement was void and unenforceable, and the equitable causes of action were either time-barred or otherwise not cognizable.

While the summary judgment motion was pending, Kallis & Associates dismissed all claims against Padgett except for quantum meruit, and Bustamante & Gagliasso dismissed all claims except restitution by unjust enrichment and quantum meruit. In a written order, the trial court granted Padgett's summary judgment motion in its entirety. The trial court invoked the rule in *Leighton v. Forster* (2017) 8 Cal.App.5th 467, 490: "Where the claim of quantum meruit is based upon services performed under a contract that was void or voidable, the limitations period commences to run on either the date the last payment was made toward the attorney fees, or the last date that the attorney performed services in the case." It found the restitution and quantum meruit causes of action accrued in October 2013 when Padgett terminated Law Firms' services, and were therefore time-barred. The court ruled that the fee agreement was void and did not create a lien. Judgment was entered accordingly.

## II. DISCUSSION

Summary judgment is appropriate when there are no triable issues of any material facts and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.) We review de novo an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)

*Quantum Meruit Cause of Action*

The statute of limitations for a quantum meruit claim is two years. (Code Civ. Proc., § 339, subd. 1 ["action upon a contract, obligation or liability not founded upon an instrument of writing"].) The trial court found the quantum meruit cause of action

4

accrued in October 2013 when Law Firms' services were formally terminated. Law Firms first argue the quantum meruit cause of action accrued in January 2017 when Padgett elected to void the written fee agreement under Business and Professions Code section 6147, subdivision (b), which provides, "Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee." The contract was voidable because it omitted language required by section 6147, subdivision (a)(4) that "the fee is not set by law but is negotiable between attorney and client." Law Firms argue that "[s]electing an accrual date for quantum meruit that allows the two-year limitations period to run while there is an existing fee agreement in place" is inconsistent with the rule that a legally enforceable written contract precludes a claim for quantum meruit and would render meaningless subdivision (b) of section 6147, which allows for quantum meruit recovery upon the voiding of a fee agreement. (See *Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 460 ["the attorney remains 'entitled to collect a reasonable fee' " where an agreement is voided under Bus. & Prof. Code, § 6147].) Alternatively, Law Firms argue the cause of action accrued in April 2015 after the district court awarded reasonable fees for their services and Padgett appealed that award knowing "how much he owed to Law Firms and was bound to pay."

Law Firms' arguments rest on the premise that the existence of the parties' fee agreement precluded a quantum meruit cause of action until Padgett voided that agreement. But our Supreme Court recognized 50 years ago that a client has the "right at any time to discharge his attorney with or without cause" and that "[s]uch a discharge does not constitute a breach of contract for the reason that it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate that contract at will." (*Fracasse v. Brent* (1972) 6 Cal.3d 784, 790-791 (*Fracasse*).) The court emphasized the anomaly and

5

injustice that would result "to hold the client liable in damages for exercising that basic implied right." (*Id.* at p. 791.)

The *Fracasse* court recognized that a discharged attorney, although precluded from suing for breach of contract, is entitled to recover in quantum meruit " 'the reasonable value of services rendered to the time of discharge." (*Fracasse*, *supra*, 6 Cal.3d 784, 790.) The court explained that a cause of action for the reasonable value of services to the time of discharge generally arises at that time. (*Id.* at p. 792.) Addressing the timeliness of an action filed by a discharged attorney who had been retained under a contingent fee contract, the court announced a different rule where it is impossible to determine " 'the amount involved and the result obtained' " until the matter has been finally resolved and where "it would be improper to burden the client with an absolute obligation to pay his former attorney regardless of the outcome of the litigation." (*Ibid.*) In those circumstances, "the attorney's action for reasonable compensation accrues when the contingency stated in the original agreement has occurred—i.e., the client has had a recovery by settlement or judgment." (*Ibid.*)

Law Firms would have us apply here the "different rule" announced in *Fracasse*, such that a quantum meruit cause of action has still not accrued because remuneration was contingent on Padgett actually receiving payment from the liable defendant, which has not yet occurred. But that interpretation is at odds with the plain terms of the parties' fee agreement, which brings the quantum meruit cause of action within the general rule announced in *Fracasse*.

Paragraph 9 of the fee agreement, which governs the agreement's termination, states that either party may terminate the agreement by giving written notice to the other party. The provision continues: "Client may discharge Lawyer for any reason and at any time. Lawyer may terminate its representation of Client with Client's consent or for cause or for ethical considerations. Cause includes, without limitation, Client's breach of any provision of this Agreement; if terminated, Lawyers shall have a lien as set forth in

6

this paragraph on, but limited to, any recovery in the Litigation for the reasonable hourly value of their services. . . . If Client[s] dismiss this action against the advice of the Attorney or fires the Law Firm of Kallis & Associates p.c. or Bustamante, O'Hara and Gagliasso, client[s] agree in a contingency case, to pay attorney the hourly fee set forth in Paragraph 5A above for the time spent on the representation. Payment to be made within 10 business days of dismissal or termination. In all cases Client agrees that the lawyer(s) will have a contractual lien for either the contractual fees and costs due, or in a contingency fees case[] the reasonable value of the services and cost[s] provided." Paragraph 5[A] sets forth the hourly rate for Law Firms' attorneys, paralegals, and clerical staff. Paragraph 5[B] states that "the case will be handled as a modified [c]ontingency fee case," whereby Padgett "agrees to pay [Law Firms] as follows: [¶] Should the case go to trial, [Law Firms] get their respective attorneys fees, and any load star [*sic*] and multiplier []. Attorneys also get 20% of the award as a contingency."

Under the terms of the fee agreement, if Padgett were to fire Law Firms, the parties agreed that Padgett would pay Law Firms, within 10 days of discharge, the hourly fee for services rendered. On the other hand, if Law Firms were to terminate the representation, they would not be immediately entitled under the contract to collect for their services but would have a lien for the reasonable value of their services against any judgment or settlement. The arrangement prevents Law Firms from demanding immediate payment after withdrawing from a contingency case. The arrangement also protects Law Firms from having to wait for a recovery in the event they are terminated from a contingency case.

Significantly, Law Firms' quantum meruit cause of action does *not* seek the district court's attorney fees award or 20 percent of Padgett's damages, but rather $1,682,345 in hourly compensation for work performed from the time Law Firms were retained in 2008 through October 2013, when the district court relieved Law Firms from representing Padgett in the litigation. By the terms of paragraph 9, the cause of action

7

accrued 10 days after Law Firms were discharged, when payment for their services was due. (*Fracasse*, *supra*, 6 Cal.3d 784, 792.) Whether that occurred in July 2013 when Padgett informed Law Firms of his decision, or in October 2013 when the district court relieved Law Firms from their representation, Law Firms' 2016 complaint is untimely. We note, however, that the district court in 2019 ordered the fee award payable to Law Firms, and the circuit court affirmed the order, notwithstanding Padgett's 2017 voiding of the fee agreement. Our decision does not disturb Law Firms' entitlement to that award under the plain terms of the federal judgment.

Law Firms' appeal focuses on the voiding of a fee agreement under Business and Professions Code section 6147, but that statute is not implicated here. In light of Law Firms' discharge in 2013—which under *Fracasse* cannot trigger a breach of contract cause of action—Padgett's conduct in 2017 had no bearing on the accrual of Law Firms' quantum meruit cause of action. Ultimately, the rule in *Leighton v. Forster*, *supra*, 8 Cal.App.5th 467 was properly applied here: The client in *Leighton* voided an unsigned fee agreement under Business and Professions Code section 6148 (governing non-contingency fee agreements between attorneys and clients) by refusing to pay an invoice allegedly authorized by the agreement. (*Leighton*, at p. 487.) The quantum meruit cause of action accrued the following month when the court granted the attorney's request to be relieved as counsel. (*Id*. at p. 480.)

*Restitution Cause of Action*

The cause of action for restitution advanced by Bustamante & Gagliasso relates solely to the district court's fee award. Bustamante & Gagliasso alleged in the operative complaint that Padgett agreed to pay to Law Firms the fees and costs awarded by the district court, but Padgett "has refused to do so and has taken steps contrary to the award of fees." The Kallis Law Firm dismissed its restitution cause of action; Bustamante & Gagliasso (whether purposefully or inadvertently) did not oppose summary adjudication as to its restitution claim, apparently taking the position that its claim had also been

8

dismissed. Bustamante & Gagliasso now takes the position that the restitution cause of action, which is subject to the two-year statute of limitations for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing" (Code Civ. Proc., § 339, subd. 1), accrued either in April 2015 "when Padgett manifested his intent to keep the attorneys' fees and costs for his own" by appealing the district court's March 2015 fee order, or in 2017 when Padgett voided the fee agreement.

Bustamante & Gagliasso forfeited the argument it now makes by abandoning its restitution claim in the trial court. (*Johanson Transportation Service v. Rich Pik'd Rite, Inc.* (1985) 164 Cal.App.3d 583, 588.) Even considering the merits, we see no error in the trial court summarily rejecting the claim. We note the absence of evidence that the costs and fees awarded by the district court were actually received or retained by Padgett. (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1593 ["The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.' "].) Law Firms neither alleged nor put forth evidence that the award—which the district court confirmed was an "award of fees to counsel rather than to the plaintiff" and was required to be paid to counsel—was disbursed to Padgett. Bustamante & Gagliasso argues its professional and competent legal representation in the federal case has value, and that Padgett was unjustly enriched by those services which were reasonably valued by the district court at $1,682,345.14. But the gravamen of the restitution cause of action was the district court's attorney fees judgment, not the reasonable value of services rendered.[2] The restitution claim therefore fails as a matter of law. (*David v. Hermann* (2005) 129 Cal.App.4th 672, 685 [" 'If the

_____

[2] Padgett is incorrect that the restitution cause of action is "identical in factual substance" to the quantum meruit cause of action. The quantum meruit claim seeks over $1.6 million for "[t]he reasonable value of the legal services provided," whereas the restitution claim specifically relates to Padgett being unjustly enriched by the district court's lesser award of attorney fees and costs.

decision of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' "].)

## III.    DISPOSITION

The judgment is affirmed.  Padgett is awarded costs on appeal by operation of California Rules of Court, rule 8.278(a)(1).

_____

Grover, Acting P.J.

**WE CONCUR:**

_____

Lie, J.

_____

Wilson, J.